May it please the Court, Patrick Burns on behalf of the petitioner Teresa Urbina-Romero. I'd like to reserve two minutes of my time for rebuttal. All right. This case is about a woman who received death threats on multiple occasions in a country that is owned and controlled by gangs. The same woman was made aware of murders to her uncle and two neighbors by the same gang. The gang had also murdered a man who confirmed to her the deadly nature of the men's threats in her neighborhood, Mr. El Alarito. She came to the United States, sought asylum, and was found credible at every stage of the proceedings. Now the IJ in this case looked at the evidence after the first merits hearing and concluded that Ms. Urbina-Romero had satisfied her burden on the issue of persecution, the first element of a past persecution claim. That decision went up to the BIA, who affirmed it and narrowed the issues in the case, remanding on other issues and remanded the case for the purpose of additional fact-finding and a determination on the second and third elements of a past persecution claim. Then after the second merits hearing, despite the BIA's order and instruction, the IJ reversed herself on that position and found that Ms. Urbina-Romero had not carried her burden on it. But the IJ specifically erred here because the BIA had narrowed the issues and the IJ's own instructions to Ms. Urbina-Romero were that there would not be additional fact-finding or a determination on that issue. Now this Court can grant the petition for review based on the evidence that currently stands in the record, regardless of that procedural error and the IJ's reversal, because the evidence is sufficient for her to carry her burden on whether she received enough harm or whether she suffered enough persecution. This Court has longstanding precedent that death threats alone can constitute persecution, even where the applicant suffers no physical harm. This Court held that in Navas v. INS, Kupp v. Ashcroft, Omogiu v. Lynch, Mendoza-Pablo v. Holder. There is a long line of cases where the applicant isn't physically harmed, but the death threats against the applicant are credible. And the critical error here ---- Sotomayor, can I ask you a question on procedurally? Did the ---- when the case came up to the BIA from the IJ in the first place, in the second place, I guess, did the government argue that she had not carried, proved past persecution? No, Your Honor. The government only argued the second and third elements of the claim, nexus to a protected ground and whether the government was unable or unwilling to protect her. And reading that transcript of the second merits hearing, the government's closing argument mentions nothing about her failing to prove persecution. And, of course, the government did this because the IJ had specifically instructed the parties that only the other issues would be at play. So Mr. Bina-Romero was not on notice of this. The government was not on notice that this issue would be brought up. And the government not only didn't argue, they didn't elicit any questions on that issue, nor did the IJ. And that's why the procedural error, why there was a failure of due process. The specific instruction of Mr. Bina-Romero, as well as the BIA's order, shows both the agency and the IJ instructing her that that issue would not be revisited. And under this Court's due process case law, a lack of notice or fundamental in fairness in the ability for the applicant to present evidence. Ginsburg. How was the applicant unable to present evidence? There was no impediment to the presentation of evidence, was there? There was, Your Honor, because the BIA's order specifically noted that if she proved the other two elements of the claim, she would satisfy the past persecution claim. And the IJ's instruction at the master calendar hearing, which comes on page 94 of the record, is critical here because she specifically says there would only be determination and fact-finding on the second and third issues. Therefore, Ms. Bina-Romero and her counsel were respecting the ground rules as laid out by the IJ. So the IJ, both the BIA in its agreement and the IJ at the hearing, limited the hearing to those two issues and not the issue of past persecution? Yes, Your Honor. It narrowed the hearing to those two issues because the IJ had already reversed her. So what's your theory of what happened? Did the BIA just not read the file? Your Honor, the IJ and the BIA might have forgotten about that. At least the IJ likely forgot about her first conclusion. Nevertheless, it's impossible for this Court to determine exactly why the IJ reversed herself because there's no acknowledgment in the IJ's second order why she was flipping the conclusion on this issue. There was no acknowledgment that the first time around she concluded that she proved persecution. There was no reference to the fact that evidence had changed or testimony had changed. There was a credibility ruling that she was credible, which suggests that none of her testimony was conflicting with testimony from the first time around. And so this Court cannot meaningfully review the BIA's decision because it doesn't state the basis for why there was a reversal on this issue. What evidence would have been presented? If the petitioner and her counsel had been aware that the persecution issue was being revisited? Your Honor, she submitted a declaration and a motion to reopen which shows the additional evidence she would present, which includes the following. First, that when the men came to threaten her, she understood these threats to be threats to her life and that that was confirmed by the man, Mr. Alarito. The BIA's decision places a lot of emphasis on the fact that these were indirect threats, but her declaration clarifies they were direct threats, that she understood them to be direct threats. She also testified she became so afraid and stressed out that she couldn't sleep at night, that she was having physical ailments of distress. She couldn't afford to go to a doctor. She would have supplemented her testimony with all these facts to show the credibility of these death threats. However, the evidence in the record as it stands is sufficient under this Court's case law. Specifically in the key case here is Ruano v. Ashcroft. It is true that in a case that the BIA relied on LIM v. INS, this Court held that an unfulfilled threat without something more, quote, something more, would be insufficient to carry a claim of persecution. But in Ruano v. Ashcroft, this Court identified a number of factors that would allow an applicant to prove that something more. One of them is close confrontation. That's the case here. She was confronted at her home face-to-face in front of her mother and daughter, and that's not only established through her testimony, but her mother's declaration. Weren't her – was this the case with her brothers who were – her relatives who were persecuted? Her uncle was murdered by the gang, and then she had two neighbors. One neighbor was murdered by the gang for failing to give up property, and her entire family was murdered. Another neighbor was raped, reported the rape to the police, and then the gang hung her outside of her house with ropes she used to gather wood. And then the man who confirmed her, the man who had ties to the gang that came to Mr. Bina-Romero and said, they're going to kill you, he was killed after she left for this confirmation and informing her of that. And I see – But all of that evidence was presented originally. Is that correct? Yes, Your Honor. I see my time has left, and I want to reserve the remainder. It was presented, and that was the basis for the original holding that she had established past persecution. Yes, exactly, Your Honor. Thank you. Right. Okay. We'll hear from the government. Good morning, Your Honors. Brinton Lucas for the government. I would just like to start with addressing Judge Rawlinson's questions just about the prejudice that Petitioner alleges here and why we don't think there is any. And I'd like just to point you to three things, what happened on remand in front of the immigration judge. First, it's simply not the case that the immigration judge instructed that Petitioner could not present testimony on the credible – or on the fact of persecution on remand. I'd point you to pages 377 to 378 of the administrative record. It's clear there's no instruction to that effect. Secondly, Petitioner, in fact, did present evidence on the persecution issue. She did it in two ways. First, she presented documentary evidence through both her declaration and a declaration of her mother to the immigration judge on remand. Secondly, she also provided at least eight pages' worth of direct testimony about evidence of the persecution and whether this rose to that level. And I'd point you, those are on pages, excuse me, 402 to 410 of the administrative record. The declarations can be found at 539 to 546. And third, the evidence that she did give, as your question suggested, Judge Rawlinson, the fact that the evidence that she would have provided in the declaration, that evidence would not have changed things materially. Most of the evidence simply elaborates or fleshes out some details about the past persecution issue, but none of the factors in there ultimately would change the outcome of this case. So you're arguing that she could have presented further evidence and she didn't. But the BIA and the remand said that she had had, seemed to affirm the IJ's original finding that she had demonstrated past persecution and instructed that if she can establish membership in a social group based on her family relationship and that the government can't protect her, then she's entitled to relief. I mean, she was entitled to presumption. So why would she think that she had to put on additional evidence of past persecution? Even if she could, she wasn't --"Nobody said you can't do this." But why would she think that that was what she was supposed to do? Your Honor, the immigration judge did say that she would consider all the evidence in the original proceeding, and she did allow Petitioner to go through and establish testimony on the nature of the persecution. And I think regardless of what she may have thought, the fact of the matter is she did present testimony on this evidence, detailed testimony, and we think the evidence that she would have presented or that she claims she would have presented that's in her declaration submitted on the motion to remand or reconsider, that evidence wouldn't have changed the actual outcome of the case. So regardless of what she may have thought, we don't think there wouldn't have been an actual change had she presented this evidence. Counsel Procedure, let me just ask you, in terms of the ruling that was made by the IJ following remand, was the ruling based on a lack of additional evidence or the evidence that was actually presented at the remand hearings? The — in the respect of the past persecution issue, Your Honor, the immigration judge, what she concluded on remand was that this didn't rise to the level of persecution based on the evidence presented. And I think it's critical that what happened here is that the evidence presented to the immigration judge in the first hearing and the evidence presented to her in the second hearing differed with respect to the threat issue. So I would just point you, on the first hearing, to page 816 of the administrative record, where the immigration judge found that she had suffered past persecution because the gangsters on at least two different occasions threatened to, quote, take her out. But on the remand, when she presented evidence on this issue, it became clear that this differed from that finding in two respects. First, Petitioner had been threatened on only one occasion, and, two, that threat was indirect. I'd point you to pages 407 and 433 of the declaration, where it was clear that on the second encounter Petitioner had with the gangsters, they told her they would hurt her boyfriend where it would hurt him the most. And then she later discussed that with a neighbor, El Alarito, who clarified that when they said that, they meant they were going to hurt her. So those are two very different accounts of the threats that she faced, and I think that explains why the immigration judge concluded that she did not suffer. Did the immigration judge say that? No, Your Honor. No. No, but we don't ultimately think that that matters, because at the end of the day, we don't see how Petitioner suffered any prejudice here, given that the evidence that she would have presented, had she known that she could present more on the past persecution issue, we don't think that would have materially changed anything. Why did she have to present any evidence to a finding that had already been made and affirmed by the BIA? I don't get that. I mean, the government didn't say, hey, let's redo the prior hearing. It said, let's go on to the next two factors, didn't it? The government, everybody proceeded and argued about the following two factors, but Ms. Urbina-Romero did present evidence on the past persecution issue, and the government cross-examined her on that issue. To the extent Your Honor is concerned about the law of the case question here, I'd say that that doctrine doesn't apply here, at least for two main reasons. First, we don't think law of the case doctrine can be imposed on immigration proceedings, just as a general matter. And second, even if it did, if it could, it wouldn't help Ms. Urbina-Romero here. I'm not concerned about the law of the case as much as I am about just fundamental fairness and due process. Because I just don't see how she could have known that she was supposed to reprove what the I.J. had already said she proved and the BIA said she proved. Your Honor, I acknowledge those concerns, but at the end of the day, even the evidence that she would have put on, we don't think that that would have risen to the level of a direct threat at all at that point. And so … So is it your position that she, Sua Sponte, put on the evidence not in response to anything that the I.J. said or that the government said, but she elected to put on the additional evidence of persecution? Yes, Your Honor. She came forward and essentially she drove the train of this narrative, and she set up her case, established in great detail, eight pages' worth of direct testimony and also submitted two declarations that went into great detail about the threats she faced. And in doing so, she reopened this issue and was subject to both … That the government couldn't do anything about it. Wasn't that one of the issues? I mean, some of this is relevant to the issues that she had to prove on remand, I would think. Your Honor, it could have been, but the fact of the matter is she did go into great detail, and in doing so, she had the opportunity to put this issue back and get her testimony out. We just don't see how she was in any respect prejudiced by not having a chance to enter the evidence that was in the declaration. I mean, at the end of the day, whether one considers the evidence in her declaration on the motion to reconsider or just the evidence that's in the record, we don't think that would rise to pass persecution in any event. So to the extent Your Honor is concerned about any sort of fairness concerns or whatnot, we just don't think that error would be enough. I think, but an I.J. already found that the evidence that she put on in the first hearing did amount to that. Your Honor … You can say that, you know, whatever she proved, it wasn't … We're not to judge credibility or anything else. And, counsel, your agency is called the United States Department of Justice, not the United States Department of Winning. And I think that any fair look at this would say the just result is to send it back and let her have, if we're going to put that on the table, let her have a full and fair opportunity to meet it. But to say, I mean, as a judge or as a lawyer, if I didn't know the rules going in, I wouldn't feel like I got a fair shake. And I don't see how Ms. Urbina-Romero can feel that she got a fair shake. Your Honor, just to address that concern, I would point you again to the fact that the evidence in the two separate hearings was dramatically different. So we don't think that there's actually that much of a shock that the immigration judge in the first hearing concluded that, oh, we found threats here of rising to the level of past persecution, because the evidence was based on testimony there and a finding that she was threatened on two separate occasions and that the threats were that the gang members would, quote, take her out. On the second hearing, she presented evidence, and that testimony was subject to cross-examination, and during that cross-examination, it came out that the evidence was that she was threatened only one time, and that threat was indirect. She was told, my gang members are going to hurt her boyfriend where it would hurt them the most. Roberts, I know, I understand that's your version of it and your explanation for why the I.J. did what she did, but that's not what she said. And we need to hear it from the decider, not the advocate. But what is our standard of review, though? Your standard of review, Your Honor, is the substantial evidence standard. And we just don't think in this context, for all the various reasons, whether for the evidence that would have been presented or what not, that the ultimate question is, did these threats rise to the level of past persecution? And we don't think that they did, and we think, especially under the substantial evidence standard, they don't. So any alleged procedural error here would at most be harmless, Your Honor. As a procedural matter, I also wanted to ask you whether or not the issue of the brief was exhausted before the BIA. Was that issue exhausted? Well, I see I'm out of time. I have to leave to answer your question. Please. We don't think that issue was exhausted. The Petitioner did raise fleetingly a reference to due process in her brief before the BIA, but she did not discuss this particular issue of being unable to present evidence in her papers. And then when she did address this issue in the motion to reconsider, again, the evidence that she pointed to we don't think would have changed the result. All right. Thank you, counsel. Thank you. Rebuttal. A few points on rebuttal, Your Honors. First, the government surmises that the IJ had concluded differently because the evidence in the record had changed. However, that's just a supposition. There's no record of that. Nothing in the IJ's order specifically explains why there was a change on this issue, nor is there one in the BIA order. And this Court doesn't have a record that it can meaningfully review and come to that conclusion. Do we have a record that we can review to determine whether or not substantial evidence supports that ruling? Yes, Your Honor. The evidence in the record from both hearings is enough for this Court to overturn on a substantial basis. Is it enough to sustain it? Yes, it is, Your Honor, because of all the cases that Mr. Bino-Romero relies on were analyzed under the substantial evidence standard. And in all of them, it shows that if you prove — if you — if the applicant faces death threats, and there's some indications of credibility to those death threats, including many of the cases talk about murders of family members or neighbors, such as Kupp v. Ashcroft, Mendoza-Pablo v. Holder. And so this Court does have — there is enough evidence in the record for this Court to reverse on the substantial evidence standard. The problem is, on the substantial evidence standard, if the evidence can go either way, then we do not have the authority to reverse. So what's your response to that? The evidence here would compel any — any reasonable adjudicator here that she satisfied her burden, because Rwanda v. Ashcroft mentions three factors that you can prove to show something more in combination with the death threats to carry your claim. Any one of them is sufficient. She's proven all three, close confrontation, continued interest by her persecutors, and murders of other people around her. Do you consider this to be a direct threat or an indirect threat? Your Honor, this is a direct threat, and the government errs in characterizing it as an indirect threat. She — she answered one question about that, that the government points to, but all she was clarifying there was that the persecutors didn't say the magic words to her, we will kill you. But she understood the term, we're going to hurt Mr. Bonilla where it hurt you the most, to be a threat of harm to her, and then it was confirmed to her by Mr. L. Alrito. And so there is no direct threat or there is no indirect threat here. These were direct threats, and that's corroborated by her mother's declaration. Finally, let me ask you, do you think this issue of the violation of due process for failure to allow additional evidence was exhausted? Yes, Your Honor, this was exhausted below. Ms. Urbina-Romero, on page 282 of the record in her brief to the BIA, she makes an argument that discusses all the procedural errors. She discusses ignoring the Court's remand order and specifically ignoring her own instructions. She uses the words due process in a footnote. And so reading this in conclusion, I think the exhaustion standard is just that it has to be said. But the BIA decided — referred to the law of the case argument, I think. And the — if I understand it, the BIA constitutional questions are not for it to decide. So — Yes, Your Honor. And even then — I think that the relationship of the two records was clearly before that. But the question of whether or not she was not allowed to present additional evidence, that specific issue, was that — Yes, that's — — raised to the BIA. Where in the record was that raised? On page 282 of her brief, she discusses that — Where is that in the record? What page of the record is that? Page 282 is her brief to the BIA — Okay. — that discusses the IJ's reversal and why that violated due process. The issue of her not being able to present her evidence is in her motion to reopen. Okay. So her motion to reopen can be granted if she was precluded from presenting evidence. But the motion to reopen isn't raising the issue to the BIA, right? Yes. The motion to reopen is her telling the BIA that she was unable to present this evidence. The BIA should have granted that. And even though the government raises materiality, it's important to note that the BIA never addressed the materiality of the new evidence in her declaration. So this Court should not even review that determination if, at the very least, this Court can remand on the motion to reopen as an abuse of discretion by the BIA, because she did argue there that she was unable to present evidence. However, in the brief to the BIA, she argued that this was a fundamental unfairness because of the BIA's order and those explicit instructions. But those are two different arguments. The law of the case argument is one, and the inability to present additional evidence. Would you agree those are two different arguments? Yes, Your Honor. There are really three distinct procedural errors. A violation of the scope of the remand order, a lack of due process, and inability to present evidence, as well as a violation of law of the case. And any one of those procedural errors can be the basis for this Court granting the petition for review and remanding to the BIA so the BIA can get this right with the additional evidence in the record to the extent that's necessary for her to carry her burden. All right. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the Court. The next case on calendar for argument is Naharan v. Whitaker.
judges: Schroeder, Rawlinson, Lasnik